**Stephen J. ACKERMAN, Jr., Appellant,**

v.

**GENEVIEVE ACKERMAN FAMILY TRUST, et al., Appellees.**

**No. 05–CV–652.**

District of Columbia Court of Appeals.

Argued Sept. 6, 2006.

Decided Oct. 12, 2006.

John T. Szymkowicz, with whom J.P. Szymkowicz, Washington, DC, was on the brief, for appellant.

---

George B. Huckabay, Bethesda, MD, for appellees.

Before REID and FISHER, Associate Judges, and SCHWELB, Senior Judge.

FISHER, Associate Judge:

Appellant Stephen J. Ackerman, Jr., lost his lawsuit to reform a trust created by his mother. Enforcing a "no contest" provision of the trust, the trial court then declared that appellant had lost any and all interests he may have had under the trust and his mother's will. Appellant challenges the latter ruling, but we affirm.

## I.

In May 2002 Genevieve Ackerman created a revocable trust (the Genevieve Ackerman Family Trust). Her husband, now deceased, created a similar trust, and the Ackermans placed most of their assets in those trusts. The couple's primary purpose was to pay for their health, comfort, and support in their remaining years. A secondary purpose was to provide support for their son, Stephen J. Ackerman, Jr., the appellant. Appellant and his sister, Mary Frances Abbott, were to share the assets remaining after the death of their parents.

Most of the trust provisions are unimportant to this appeal. We mention, however, that Frank Abbott, the Ackermans' son-in-law, was named trustee. Mary Frances Abbott was nominated to be the successor trustee if her husband was unable to serve. Most importantly for this litigation, Article XII of the Trust contained the following provision:

> In the event that a beneficiary of any of the trust assets contests the validity of any provision of the Settlor's Will, any trusts which the Settlor or the Settlor's spouse have created, or any transfers to this trust or the trust for the Settlor's spouse, such beneficiary shall lose all of his or her right to any and all interests he or she may have from the Settlor's Will and any trusts which the Settlor or the Settlor's spouse have created. The person who has "contested" shall be deemed to have predeceased me.

Among the assets transferred to the trust were one-half tenant in common interests in three dwellings: (1) the home in the District of Columbia where the Ackermans lived; (2) a home in the District where appellant lived; and (3) a condominium at Sea Colony in Bethany Beach, Delaware. Those properties and other assets were described in Exhibit A, which was attached to the trust agreement "and made a part hereof." This controversy centers on the Delaware condominium, which appellant had hoped to inherit outright.[1]

In August 2003 Stephen J. Ackerman, Jr., filed a complaint which sought an accounting of the trust assets, income, liabilities, and distributions; removal and replacement of the trustee and successor trustee; and reformation of the trust. Appellant maintained that the condominium at Bethany Beach had been placed in the trust in defiance of his mother's wishes. Named as defendants were the current appellees—the trust, Frank M. Abbott (the trustee), and Mary Frances Abbott. In addition to answering the complaint, appellees asserted a counterclaim for a declaratory judgment

> determining whether the Plaintiff/Counter–Defendant, Stephen J. Ackerman, Jr., has forfeited any rights that he may have had as a beneficiary of Genevieve Ackerman's Last Will and Testament

---

1. This was not a unilateral hope on appellant's part. Before her death his aunt, who then owned the property jointly with Mrs. Ackerman, had voiced her intention to leave it to appellant. Before she created the trust, his mother had stated the same intention.

and/or the Genevieve Ackerman Family Trust and otherwise determining the rights and obligations of the parties to this lawsuit with reference to Article XII ("Contesting This Trust") of the attached Revocable Trust Agreement.

On May 9 and 10, 2005, Judge Weisberg conducted a bench trial, hearing the testimony of Mrs. Ackerman[2] and other witnesses. At the end of the trial the court delivered a detailed oral ruling, which included the following findings of fact. "There was no mistake at all based on the evidence in putting the Sea Colony property into the trust." "Mr. Ackerman's testimony that somehow his sister or Mr. Abbott or Mr. Coroneos [the attorney who drafted the trust instrument] or somebody had slipped it in at the last minute, was not credible to say the least, and there is absolutely no basis to reform the trust or to conclude that it was not intended to be part of the trust in the first place." The court therefore denied the relief requested in appellant's complaint.

Turning to the counterclaim, the court reviewed the law in the District of Columbia and concluded that "no contest" clauses "are perfectly valid and enforceable." Noting local caselaw holding that there is no exception to enforcement of a "no contest" clause even when litigation is brought in good faith and with probable cause, the court commented that "surely there is no exception to [enforcement] where the challenge to the instrument is as without merit as this one has been." Judge Weisberg entered judgment for appellees on both the complaint and their counterclaim, declaring

> that Article XII of the Trust is a legally valid and enforceable provision, that Article XII is unambiguous as written and reflects the intent of the Settlor, that Plaintiff, as a beneficiary of the Trust, has, by this action, contested the validity of Trust provisions and of transfers to the Trust, and that by doing so he has "lost all of his ... right to any and all interests he ... may have from the Settlor's Will and any trusts which the Settlor or the Settlor's spouse have created."

## II.

■ Different jurisdictions take different positions on whether and when a "no contest" or *in terrorem* clause in a will or a trust will be enforced. *See generally* Annotation, *Validity and Enforceability of Provision of Will or Trust Instrument for Forfeiture or Reduction of Share of Contesting Beneficiary*, 23 A.L.R.4th 369 (1983). However, it is well-established in the District of Columbia that such clauses are valid and enforceable.

The leading case in this jurisdiction is *Barry v. American Security & Trust Co.,* 77 U.S.App. D.C. 351, 135 F.2d 470 (1943), which held that "the court below was unquestionably correct in holding that the interest of Barry under the will was forfeited by his filing of the caveat." *Id.* at 352, 135 F.2d at 471. The court deemed it settled in the District of Columbia "that a provision avoiding a disposition of property for action of the beneficiary in contesting

---

2. Mrs. Ackerman clearly was upset by this litigation between her children, and she testified, among other things, that the "no contest" provision was "inhuman" because her son would be "considered as dead" if he "disapprove[d] of [the trust]." The trial court viewed this testimony as "an emotional reaction" to the "lawyers' language" in Article XII. "[I]t suggests ... that her son [would] have predeceased her and that of course is not something she can accept easily." Nevertheless, having heard all the testimony, the court concluded that Article XII "is unambiguous, intended by the settlor at the time, and, therefore, enforceable according to its terms." This finding regarding the settlor's intent certainly is not clearly erroneous.

the will is valid and will be enforced notwithstanding good faith and probable cause in making the contest." *Id.* at 353, 135 F.2d at 472. Acknowledging the existence of contrary arguments, the court observed that "[t]he view that the wishes of the testator should be disregarded with respect to the disposition of his property in the interest of greater freedom of litigation does not impress us as resting on a sound or logical basis." *Id.* at 354, 135 F.2d at 473. Emphasizing the frivolous nature of the litigation, the court observed that "even if the rule avoiding forfeiture where contest is based on probable cause were recognized here, it would not avail appellant [Barry], since there was no probable cause shown for the contest." *Id.*

Some commentators thought that the sentence last quoted expressed a narrow holding in *Barry*, leaving uncertain the views of this jurisdiction about will contests conducted in good faith and with probable cause. However, any uncertainty was resolved several years later when the United States Court of Appeals held that a "forfeiture provision contained in [a] will [is] valid and the filing of [a] caveat [a contest of the will] work[s] a forfeiture of the interest of the devisee filing it, irrespective of the question of good faith or probable cause for the litigation." *Sullivan v. Bond*, 91 U.S.App. D.C. 99, 198 F.2d 529 (1952) (citation omitted).[3] Although no-contest clauses "appear most frequently in wills, there appears to be no reason to apply a different test in determining the validity of such a clause in a living trust instrument...." BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 181 at 94 (rev. 2d ed. 1979 and 2005 Supp.).[4]

This court has not discussed the issue, but *Barry* and *Sullivan* are binding upon us. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971) (decisions of the D.C. Circuit prior to February 1, 1971, are binding upon a division of this court). Moreover, we recognized the vitality of the forfeiture doctrine in *In re Estate of Delaney*, 819 A.2d 968, 996 (D.C.2003), noting the trial court's holding that Valentine's attempted contest of the will stripped her of her status as a legatee by operation of the no-contest clause in the will. *Id.* & n. 22. *See also In re Estate of Himmelfarb*, 345 A.2d 477, 480 & n. 8 (D.C.1975) (settlement agreement provided that beneficiary who withdrew her caveat contesting the will would receive her bequest notwithstanding the will's *in terrorem* clause).

Appellant notes that the validity of *in terrorem* clauses in the District of Columbia has not been addressed by an appellate court in many years and contends that we "should, based upon modern decisions of other state supreme courts, hold that [appellant] did not violate the *in terrorem* provision in the Genevieve Ackerman Family Trust by filing his Complaint." Appellant's brief focused more directly on the validity of such clauses, but his counsel spent much of his time at oral argument asserting that filing and trying appellant's

---

3. The Uniform Probate Code provides that a no-contest clause "is unenforceable if probable cause exists for instituting proceedings." UPC § 3–905. The District of Columbia has not adopted this provision. Endorsing the same rule, phrased differently, the RESTATEMENT provides that such a clause "is enforceable unless probable cause existed for instituting the proceeding." RESTATEMENT (THIRD) OF PROPERTY, § 8.5 (2003).

4. The rule endorsed in the RESTATEMENT (THIRD) OF PROPERTY differs somewhat from our common law. See note 3, *supra*. Nevertheless, the RESTATEMENT recognizes that "[w]ith the increase in the use of revocable inter vivos trusts as will substitutes, no-contest clauses restraining challenges of particular provisions in those trusts serve the same purpose as do such clauses in wills, and the same test applies to determine the validity of those clauses in the two comparable situations." *Id.* at § 8.5 (comment i).

complaint did not constitute a violation of the "no contest" provision included in this trust.

The first step in answering that question is to look at the language of Article XII, which is quoted in full above. It specifically applies to "a beneficiary of any of the trust assets" who "contests the validity of ... any transfers to this trust...." The complaint filed by appellant did exactly that. It alleged that "[p]rior to May 24, 2002, Genevieve Ackerman explicitly instructed the attorney for the Trust that her condominium unit located in the Sea Colony complex on Bethany Beach, Delaware should be inherited outright by Stephen J. Ackerman, Jr. upon her death." Nevertheless, "the Sea Colony condominium was inadvertently placed via deed in the Trust rather than kept in Genevieve Ackerman's name." Using much stronger language, the complaint then asserted that "the placement of the deed to the Sea Colony Condominium property in the Trust was in defiance of Genevieve Ackerman's wishes." For relief, it requested, among other things, that the court "reform the Trust to reflect the true Settlor's true purposes in establishing the Trust...." It seems clear to us that "reforming" the trust to reflect the settlor's purposes (as alleged by appellant) would have required

returning the property to Mrs. Ackerman. Appellant plainly was contesting the validity of the transfer of the Sea Colony condominium to the trust.

The rule we are bound to apply might have unfair consequences in some situations,[5] but, on the whole, we do not believe that this is one of them. The trier of fact concluded that there was no factual basis for the complaint. "There was no mistake at all based on the evidence in putting the Sea Colony property into the trust." "[T]here is absolutely no basis to reform the trust or to conclude that it was not intended to be part of the trust in the first place." Indeed, the "no contest" provision was added to the trust with the hope of forestalling this very litigation over the condominium.

### III.

The "no contest" provision in the trust is valid and enforceable, and appellant's lawsuit to "reform" the trust clearly violated it. The judgment of the Superior Court is hereby

*Affirmed.*

---

**5.** Appellees rest their argument squarely upon the efforts of Mr. Ackerman, Jr., to reverse the transfer of the Sea Colony condominium. We do not consider whether there might be an exception to the general rule if a beneficiary, in good faith and with probable cause, sought to remove a trustee who apparently was embezzling assets.